UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| GEO-LOGIC ASSOCIATES, INC.,<br><br>Plaintiff,<br>v.<br><br>METAL RECOVERY SOLUTIONS, INC., *et al.*,<br><br>Defendants. | Case No. 3:17-cv-00563-MMD-WGC<br><br>ORDER |

**I.   SUMMARY**

This action stems from the parties' dispute relating to contracts for engineering and technical services in connection with the mining of precious metals. The Court stayed this action to allow the parties to arbitrate their dispute, which resulted in an award that Defendant now challenges. There are two substantive motions pending before the Court. First, Plaintiff Geo-Logic Associates, Inc. ("GLA") moves to (1) confirm the arbitration award, asking the Court to enter judgment regarding the same, and (2) seeks attorneys' fees and expenses ("GLA Motion").[1] (ECF. No. 25.) Second, Defendant Metal Recovery Solutions, Inc. ("MRS") moves to partially vacate the final arbitration award before the Court rules on the GLA Motion ("Motion to Vacate"). (ECF. No. 30.)[2] For the reasons discussed below, the Court confirms the arbitration award and accordingly denies the Motion to Vacate. GLA's request for attorneys' fees is denied.

---

[1] The Court notes that GLA's "motions" were not properly filed as required by LR IC 2–2(b) because each contains a different request for relief. Nevertheless, the Court will address each request.

[2] MRS has separately moved to seal certain exhibits to the Motion to Vacate. (ECF No. 29.) This Court has previously sealed similar exhibits for both parties in this case, (ECF No. 55; ECF No. 56), and finds that the same reasoning applies to MRS's motion. Therefore, MRS's motion to seal is granted.

## II. BACKGROUND

GLA is a geologic, geotechnical, civil and environmental firm with 25 offices in eight states and an affiliate office in Peru. (ECF No. 1 at 2.) MRS is metallurgical engineering firm based in Reno, Nevada. (ECF No. 32 at 5.) Dr. Thomas Seal is the CEO, CTO and majority owner of MRS. (*Id.*) Goldcorp Inc. ("Goldcorp") is a gold production company with headquarters in Vancouver, British Columbia, Canada. (ECF No. 25-1 at 6.)

In June 2015, MRS entered an agreement with Goldcorp to provide services and equipment at Goldcorp's Los Filos gold mine ("Mine") project in central Mexico. (*Id.*) In October 2015, MRS retained the services of GLA to provide personnel and manage the project. (*Id.*) Per a Master Services Agreement ("MSA") between the parties, the work would be carried out in designated phases. (ECF No. 25–1 at 6.) At a meeting on September 23, 2016 ("Meeting"), MRS and GLA discussed a 70/30 profit split between MRS and GLA for Phase 3 of the project. (ECF No. 32 at 15.) In December 2016, MRS began work on Phase 3 without GLA's services. (ECF No. 1 at 8; ECF No. 39-1 at 44–45.)[3]

On September 23, 2017, GLA filed this action, asserting claims against MRS and Dr. Seal. (ECF No. 1.) In lieu of proceeding in this Court, the parties stipulated to binding arbitration as to claims against MRS. (ECF No. 20.) During arbitration, MRS asserted counterclaims against GLA. (ECF No. 25-1 at 4.) The arbitrator ultimately found in GLA's favor, awarding GLA $2,037,586, plus prejudgment interest at the lawful rate accruing from September 13, 2017—the date of commencement of this action.[4] (ECF No. 25-1 at 4–13.)

GLA's Motion seeks confirmation of the arbitration award and an executable judgment against MRS. MRS argues in response that the arbitrator improperly decided

---

[3] Additional factual background can be found in the arbitration award. (ECF No. 25-1 at 5.)

[4] GLA states that as of the date the GLA Motion was filed—September 25, 2019—prejudgment interest is $288,164.90. (ECF No. 25 at 5.) MRS does not dispute GLA's prejudgment interest calculation methodology. (ECF No. 34 at 2.)

2

certain terms of the award and has separately moved to vacate those terms.

## III. LEGAL STANDARD

Review of an arbitration award is "both limited and highly deferential". *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1288 (9th Cir. 2009). Upon application for confirmation of an arbitration award, "the court must grant such an order unless the award is vacated, modified, or corrected . . .." 9 U.S.C. § 9. "The Federal Arbitration Act enumerates limited grounds on which a federal court may vacate, modify, or correct an arbitral award. Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award." *Kyocera Corp. v. Prudential–Bache Trade Serv. Inc.*, 341 F.3d 987, 994 (9th Cir. 2003) (internal citations omitted). Vacatur is permitted "where the arbitrator[] exceeded [his] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). An arbitrator exceeds his powers "not when [he] merely interpret[s] or appl[ies] the governing law incorrectly, but when the award is completely irrational, or exhibits a manifest disregard of law." *Kyocera*, 341 F.3d at 997 (internal citations omitted). However, "if, on its face, the award represents a plausible interpretation of the contract, judicial inquiry ceases and the award must be enforced." *McKesson Corp. v. Local 150 IBT*, 969 F.2d 831, 833 (9th Cir. 1992).

"The completely irrational standard is extremely narrow and is satisfied only where the arbitration decision fails to draw its essence from the agreement." *Comedy Club,* 553 F.3d at 1288 (quoting *Hoffman v. Cargill Inc.*, 236 F.3d 458, 461–62 (8th Cir. 2001)). To determine if an arbitration award draws its essence from the agreement, courts view the agreement in light of its "language and context, as well as other indications of the parties' intentions." *Bosack v. Soward*, 586 F.3d 1096, 1106 (9th Cir. 2009) (quoting *McGrann v. First Albany Corp.*, 424 F.3d 743, 749 (8th Cir. 2005)). Additionally, if there is a basis in the record for the arbitrator's decision, it will not be deemed completely irrational. *See Comedy Club*, 553 F.3d at 1289.

Manifest disregard of the law requires more than an error in interpretation or

3

application of the law. *Thompson v. Tega–Rand Int'l*, 740 F.2d 762, 763 (9th Cir. 1984) (per curiam). "[M]ere allegations of error are insufficient." *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 879 (9th Cir. 2007) (quoting *Carter v. Health Net of California*, Inc., 374 F.3d 830, 838 (9th Cir. 2004)). Instead, it must be "clear from the record that the arbitrator[] recognized the applicable law and then ignored it." *Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 832 (9th Cir. 1995).

**IV. DISCUSSION**

MRS asserts that the portion of the award finding that MRS and GLA entered into an oral contract for Phase 3 of the Mine is irrational and manifestly disregards the law. (ECF No. 30 at 2–3.) As to the former, MRS claims the arbitrator disregarded a requirement in the MSA that work orders for the Mine had to be in writing. (ECF. No. 30 at 2.) As to the latter, MRS argues that the arbitrator ignored the requirement that there must be a meeting of the minds on all material terms in order for a contract to be formed. (ECF. No. 30 at 2–3.) The Court will address each contention in turn.

On the issue of irrationality, MRS specifically claims that the arbitrator disregarded a requirement in paragraph 1 of the MSA that work orders had to be in writing. (ECF No. 30 at 8.) To support its argument, MRS notes that the award "does not consider or reference the requirement" that work orders had to be in writing, and that the arbitrator failed to "reference or consider" a "plethora of material evidence proffered by MRS on this central issue . . .." (ECF. No. 30 at 5–6.) MRS contends that the award is therefore completely irrational. The Court disagrees.

It is a universally accepted rule that arbitrators are not required to state the reasons for their decisions. *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1403 (9th Cir. 1992) (citing *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 598 (1960)). This rule "presumes the arbitrator[] took a permissible route to the award where one exists." *Id.* at 1403.

Here, there is enough evidence in the record for the arbitrator to plausibly find that oral agreements were permissible under the MSA. As an initial matter, while the MSA

provides that work will be "set out in work orders", it does not state that such work orders need to be in writing. (*See generally* ECF No. 30-2 at 101–113.) Notably, the MSA does explicitly provide that other agreements have to be in writing. For example, paragraph 1 of the MSA states that "[n]o change in the amount due or time of performance shall be effective until approved in writing by MRS . . .." (*Id.*) Additionally, paragraph 4 of the MSA states that "[u]nless MRS agrees to otherwise in writing, the Contractor shall provide the Services only through the 'Key Individual' or 'Key Individuals' listed in a Work Order." (*Id.* at 102.) Because the MSA specifically identifies when certain agreements must be written, the arbitrator could plausibly conclude that the lack of such identification for work orders meant that they were not required to be in writing.

Similarly, the arbitrator could have concluded that the parties had a course of conduct for orally agreeing to work orders. Relevantly, Phase 2B had a written work order, but the parties orally agreed to apply this work order to Phases 2C and 2A. (ECF No. 30-2 at 48–49.) In light of the parties' past oral agreements, the arbitrator reasonably could have concluded that the Phase 3 work order was not required to be in writing. *See Metzler Contracting Co. LLC v. Stephens*, 479 F. App'x 783, 784–85 (9th Cir. 2012) (finding that district court properly granted motion to confirm where the arbitrator interpreted the contract in "in light of the parties' acts and conduct").

The Court is unpersuaded by MRS's contrary contentions. MRS argues that the oral agreement to Phases 2C and 2A was a "one-off dictated by extenuating circumstances", and that "there was a written agreement for Phases 2C and 2A in the form of the Phase 2B Work Order." (ECF NO. 42 at 3.) Additionally, MRS argues that interpreting the MSA to require written changes to oral work orders is "impossible and senseless." (*Id.*) Even assuming MRS is correct on these points, this argument is beyond the instant scope of review because the Court is not permitted to determine the "rightness or wrongness of the arbitrator's contract interpretation." *Aspic Eng'g & Constr. Co. v. ECC Centcom Constructors LLC*, 913 F.3d 1162, 1166 (9th Cir. 2019); *see also Bosack*, 586 F.3d 1096 at 1106 (internal quotations omitted) ("Under the completely irrational doctrine,

1 | the question is whether the award is irrational with respect to the contract, not whether the [arbitrator]'s findings of fact are correct or internally consistent."). Having already found that the arbitrator could have justifiably concluded that the MSA did not require work orders to be in writing, the Court finds that the award is not completely irrational and vacatur is therefore improper. *See Comedy Club*, 553 F.3d at 1289 (9th Cir. 2009) ("Because we cannot say that there is no basis in the record for the arbitrator's decision, we hold that the arbitrator's award is not completely irrational.").

MRS's claim that the arbitrator disregarded the law regarding material terms is also unavailing. MRS's arguments relative to this issue fail for many of the same reasons discussed *supra*. Chiefly, while MRS argues that the arbitrator acknowledged, but ignored, the legal requirement that there be a meeting of the minds on all material terms to form a contract[5], the evidence in the record shows otherwise. The arbitrator specifically concluded that the parties agreed to the material terms for Phase 3 at the Meeting noted *supra*. (ECF No. 25-1 at 9.) The arbitrator found that the principal topic of the Meeting—which lasted roughly three and a half hours—was the 70/30 split. (*Id.* at 9–10.) Additionally, the arbitrator found the testimony of GLA's witnesses regarding the 70/30 split more credible than MRS's witnesses. (*Id.* at 10–11.) This finding also comports with handwritten notes taken at the Meeting. (*Id.* at 10.)

In any event, because the evidence in the record shows that the arbitrator *applied* the legal requirement that a contract must have a meeting of the minds on all material terms, MRS's contention to the contrary is baseless. This Court concludes that MRS has not demonstrated that vacatur is proper. The Court will therefore confirm the award and enter judgment accordingly, as requested in the GLA Motion.

The Court will, however, deny GLA's request for an award of attorneys' fees. (ECF No. 25 at 6.) Relying on NRS § 38.234, GLA claims that it should be granted attorneys' fees and expenses incurred in bringing its motion. (*Id.*) But while § 38.234 seeks to

---

[5]*See e.g., Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250, 255 (Nev. 2012); *May v. Anderson,* 119 P.3d 1254, 1257 (Nev. 2005).

6

promote a policy of finality of arbitration awards, this must be balanced with the "need to avoid unduly burden[ing] parties with the threat of fees when they have legitimate concerns about the legal validity of an award." *Summa Emergency Assocs., Inc. v. Emergency Physicians Ins. Co.*, No. 72913, 2018 WL 2041544, at *2 n.3 (Nev. App. Apr. 20, 2018) (quoting *Duke v. Graham*, 158 P.3d 540, 548 (Utah 2007)). Here, GLA moved for fees and to recover expenses before knowing what legal arguments MRS would offer in opposition to the GLA Motion. Regardless of GLA's motivations in requesting fees so prematurely, the Court finds that MRS legitimately raised its concerns regarding the award. The Court therefore concludes that the policy rationale for an award under § 38.234 supports a denial of fees here. GLA request for fees is accordingly denied.

**V. CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that Plaintiff Geo-Logic Associates, Inc.'s motion for confirmation of the arbitration award and entry of judgment (ECF No. 25) is granted, except on GLA's request for attorneys' fees and to recover expenses. The Clerk of the Court is directed to enter judgment as follows: (1) in favor of Plaintiff in the amount of $2,037,586.00, plus prejudgment interest accruing from September 13, 2017 until the judgment is paid in full; and (2) in favor of Plaintiff on Defendant's counterclaims.

It is further ordered that Defendant Metal Recovery Solutions, Inc.'s motion to partially vacate the arbitration award (ECF No. 30) is denied.

///

///

///

///

///

It is further ordered that Defendant Metal Recovery Solutions, Inc.'s motion to seal (ECF No. 29) is granted.

DATED THIS 6th day of January 2020.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE